* * * * * * * * * * * *Page 2 
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction of the parties and of the subject matter pursuant to the North Carolina Workers' Compensation Act.
2. Royal Insurance Company was and is the carrier on the risk at all times relevant to this claim and GAB Robins North America, Inc., was its servicing agent with respect to this claim at all times relevant to this claim.
3. Plaintiff suffered a compensable injury by accident to her right knee on May 1, 1998 that arose out of and in the course of her employment with defendants on that date.
4. The parties stipulated to the admission of the following Industrial Commission forms: Form 18, Form 19, Form 22, Form 60, Form 28, and Form 28B.
5. Plaintiff's proposed issues for determination were:
 a. Whether plaintiff's average weekly wage as of May 1, 1998 was $386.02 according to the Industrial Commission Form 22 that was prepared by defendants and stipulated into evidence.
 b. Whether plaintiff has developed any back problems as a proximate result of the May 1, 1998 knee injury.
 c. Whether plaintiff has reached maximum medical improvement with respect to the May 1, 1998 injury *Page 3 
 d. What, if any, permanent partial disability plaintiff has suffered to her right knee as a result of the compensable injury that she suffered to that knee on or about May 1, 1998.
 e. What, if any, pre-existing medical condition did and does plaintiff suffer from that when considered in combination with the compensable injury to her right knee prevents her from working on a permanent and total basis.
 f. What, if any, other benefits is plaintiff due under N.C. Gen. Stat. §§ 97-25, 97-29, 97-30 and/or 97-31 for any temporary or permanent injury she has suffered to her capacity to work as a result of the injury that she suffered to her right knee on or about May 1, 1998.
6. Defendants proposed issues for determination included:
 a. Whether plaintiff has reached maximum medical improvement with respect to the May 1, 1998 injury.
 b. What, if any, permanent partial disability has plaintiff suffered to her right knee as the result of the May 1, 1998 compensable injury.
 c. What other workers' compensation benefits is plaintiff entitled to receive under the North Carolina Workers' Compensation Act?
 d. What is plaintiff's average weekly wage for the 52-week period preceding her injury of May 1, 1998?
 * * * * * * * * * * *
In accordance with the directives of the North Carolina Court of Appeals, and based upon all of the competent, credible and convincing evidence of record, the Full Commission finds as follows: *Page 4 
 FINDINGS OF FACT
1. On May 1, 1998, while employed as a baker with defendant-employer, plaintiff slipped and fell on grease on the floor and sustained a compensable injury to her right knee arising out of and in the course of her employment.
2. Plaintiff ultimately underwent arthroscopic surgery on her right knee on February 10, 1999, performed by Dr. Obremskey. Specifically, plaintiff underwent diagnostic arthroscopy with debridement of the posterior medial meniscus and chondroplasty of the medial femoral condyle. According to Dr. Obremskey's February 1999 operative note, the arthroscopic surgery revealed that plaintiff had a medial meniscus tear, meaning the tear was located on the medial or inside portion of the knee.
3. Following her surgery, on April 5, 1999, Dr. Obremskey released plaintiff to return to work full duty without restrictions. In reviewing a case for a release to return to work, it is Dr. Obremskey's usual practice to ask the patient what she does in her day-to-day job and whether she thinks she can perform her day-to-day job with her current conditions. Dr. Obremskey followed this protocol through an interpreter before determining to release plaintiff to work. Dr. Obremskey did not assign a permanent partial disability rating to plaintiff's right lower extremity. Dr. Obremskey placed plaintiff at maximum medical improvement as of April 5, 1999.
4. After her release to full duty, plaintiff returned to work at her regular job as a baker for defendant-employer at her pre-injury wages on April 8, 1999. She continued to work for defendant-employer until she voluntarily resigned in July 2000. Plaintiff alleges she was forced to terminate her employment because her duties and lifting requirements increased after a reduction in the workforce which caused her knee condition to worsen. *Page 5 
5. While plaintiff worked with defendant-employer from April 8, 1999 until July 2000, no physician assigned any restrictions to plaintiff. Plaintiff, who primarily speaks Spanish, claimed that she described all the difficulties she was having with her job to her doctor through her daughter who is fluent in both English and Spanish. Nevertheless, plaintiff's doctor continued to release her to work full duty while she was employed with defendant-employer.
6. Even though plaintiff's daughter was present to translate, contemporaneous medical notes reflect that plaintiff never complained to her physician about increased job duties. Plaintiff claims that her job duties significantly increased after her return to work in April 1999, but there was no evidence of a reduction in the work force and plaintiff's job duties with defendants did not substantially change after April 1999. When plaintiff voluntarily resigned her job with defendant-employer in July 2000, she constructively refused suitable employment.
7. Following her voluntary resignation with defendant-employer, plaintiff began working for Laurels of Forest Glenn, a senior citizens' home, in July 2000 and worked there until November 5, 2000, when she voluntarily resigned. This job required her to load about 20 trays on a cart and wheel the cart to the nurses so that the nurses could serve the residents their meals. Plaintiff also bussed tables. Plaintiff worked at this job for approximately four hours per day and had an average weekly wage of $221.03.
8. Due to continuing complaints of knee pain, plaintiff was examined by Dr. Paul Burroughs, an orthopaedic surgeon, on October 26, 2000. This was during the time period that plaintiff was working at the senior citizens' home. Dr. Burroughs requested an MRI of plaintiff's knee. Dr. Burroughs made no indication in his October 26, 2000 medical note regarding plaintiff's ability to work. *Page 6 
9. Plaintiff resigned from her job at Laurels of Forest Glenn on November 5, 2000. Plaintiff alleges that she had to resign because her duties caused her knee condition to worsen. However, plaintiff did not seek medical treatment until October 26, 2000 and Dr. Burroughs declined to remove plaintiff from work at that time.
10. On January 26, 2001, an MRI scan of plaintiff's right knee was obtained. The radiologist interpreted the MRI to show an abnormal appearance of the lateral meniscus (outside portion of the knee) likely representing a degenerative tear. Dr. Burroughs diagnosed plaintiff with a "possible recurrent meniscus tear, right knee." Dr. Burroughs used the word "recurrent" to mean that plaintiff had a new meniscus tear after her first injury. He also found she had severe flexion contracture during this time.
11. Dr. Burroughs has recommended that plaintiff undergo another arthroscopy to establish a good specific diagnosis in view of plaintiff's symptoms. In a letter to plaintiff's counsel dated August 15, 2001, Dr. Burroughs indicated that, without further surgical intervention, plaintiff would not be able to return to any activity requiring squatting, bending, stooping, or prolonged time on her feet.
12. Plaintiff was evaluated by Dr. Kevin P. Speer on November 28, 2001 who recommended plaintiff undergo an arthroscopic procedure. Dr. Speer also opined that without surgery, plaintiff's capacity to return to work would be essentially none with a possibility of sedentary work.
13. Based on the testimony of Dr. Burroughs and Dr. Obremskey, the Full Commission finds that plaintiff had degenerative problems in the knee prior to her injury. In addition, Dr. Burroughs testified that the x-rays of plaintiff's right knee from January 21, 1999, February 2, 2001, and October 23, 2001 showed that the arthritis in her knee had increasingly *Page 7 
worsened. Drs. Obremskey and Burroughs testified that plaintiff's compensable fall at work on May 1, 1998, in combination with the surgery performed by Dr. Obremskey on February 2, 1999, could have resulted in or contributed to the acceleration or aggravation of plaintiff's pre-existing arthritis in her right knee.
14. The Full Commission finds based on the greater weight of the evidence, that plaintiff's fall on May 1, 1998 combined with the surgery performed on February 2, 1999, resulted in or contributed to the acceleration or aggravation of plaintiff's pre-existing arthritis in her right knee.
15. No doctor that treated plaintiff testified with any degree of medical certainty that plaintiff's current right knee condition was not directly related to the compensable injury by accident.
16. Based on Dr. Speer's testimony that plaintiff was not complaining of hip and back pain when he saw her and based on Dr. Obremskey's testimony that a limp caused by an impaired knee cannot cause arthritis in one's other knee and back, and further based on Dr. Speer's testimony that he was aware of no peer review or epidemiological studies supporting the proposition that walking on an impaired knee caused problems with other body joints, plaintiff's hip and back complaints are unrelated to her compensable injury.
17. Plaintiff's average weekly wage based on the Form 22 is $295.40, yielding a compensation rate of $196.94.
18. Plaintiff was paid temporary total disability compensation at a compensation rate of $173.34 according to the Form 60 filed in this matter. Plaintiff is entitled to be paid for the difference between her compensation rate and the rate she was paid pursuant to the Form 60. *Page 8 
19. Regarding any disability after July 2000, there is insufficient testimony and evidence regarding the extent, if any, of plaintiff's disability after she constructively refused suitable work.
19. Although plaintiff was placed at maximum medical improvement by Dr. Obremskey in April 1999, plaintiff's condition has worsened and she is no longer at maximum medical improvement.
 * * * * * * * * * * *
In accordance with the directives of the North Carolina Court of Appeals, and based upon the findings, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The North Carolina Court of Appeals stated in Parsons v. Pantry,Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997) that once the Commission has found a claim compensable, a rebuttable presumption arises that the treatment is directly related to the original compensable injury. The burden then shifts to defendant to prove that the medical treatment is not directly related to the compensable injury. Id. In Perez v. AmericanAirlines, 174 N.C. App. 128, 620 S.E.2d 288 (2005), disc. reviewimprovidently allowed, 360 N.C. 587, 634 S.E.2d 887 (2006), the Court of Appeals held that "[a]s payment of compensation pursuant to a Form 60 amounts to a determination of compensability, we conclude that theParsons presumption applies in this context." In the case at bar, defendants admitted the compensability of plaintiff's right knee injury via a Form 60. Pursuant to the holding in Perez, the Form 60 established compensability and created a presumption in favor of plaintiff that additional medical treatment for her right knee problems was related to her previous compensable injury to her right knee. Perez v. AmericanAirlines, *Page 9 174 N.C. App. 128, 620 S.E.2d 288 (2005), disc. review improvidentlyallowed, 360 N.C. 587, 634 S.E.2d 887 (2006).
2. In the case at bar, the Parsons presumption applies and defendant have failed to rebut the presumption that the medical treatment is directly related to the compensable injury. Parsons v. Pantry, Inc.,supra.
3. Plaintiff has failed to establish that she suffers from the occupational disease of arthritis within the meaning of N.C. Gen. Stat. § 97-53(13).
4. Defendants are required to provide plaintiff with reasonably necessary medical treatment related to her compensable right knee injury by accident that tends to effect a cure, provide relief, or lessen the period of disability, including arthroscopic surgery if the authorized treating physician still recommends it. N.C. Gen. Stat. §§ 97-2(19),97-25, 97-25.1.
5. Plaintiff's average weekly wage is $295.40, yielding a compensation rate of $196.94. Plaintiff is entitled to have defendants pay the arrearage that is due based on temporary total disability compensation that was paid at a lower compensation rate pursuant to the Form 60 filed in this matter. N.C. Gen. Stat. § 97-2(5).
6. As there is insufficient evidence concerning the extent of plaintiff's disability, if any, after July 2000, this issue is not addressed in this decision.
 * * * * * * * * * * *
In accordance with the directives of the North Carolina Court of Appeals, and based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD *Page 10 
1. Defendants shall pay plaintiff the difference between the temporary total disability compensation that was paid at a lower compensation rate of $173.34 and the $196.94 compensation rate set out in this Opinion and Award, subject to an attorney's fee set out below.
2. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: 25% of the lump sum due plaintiff under paragraph 1 of this Award shall be deducted from that sum and paid directly to plaintiff's counsel.
3. Defendants shall pay all medical expenses incurred or to be incurred resulting from plaintiff's compensable right knee injury so long as it tends to affect a cure and give relief or lessen plaintiff's disability.
4. In that the record contains insufficient evidence concerning the extent of plaintiff's disability, if any, after July 2000, this issue is not addressed in this decision. The parties may hereafter enter into an Agreement, stipulate to the extent of continuing disability, or either party may request a hearing before a Deputy Commissioner regarding this issue.
5. Defendants shall pay the costs.
This the 19th day of September 2007.
 S/______________________
 DIANNE C. SELLERS *Page 11 
 COMMISSIONER
CONCURRING:
S/______________________ PAMELA T. YOUNG COMMISSIONER
S/______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1